# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## MONROE DIVISION

**ALICIA SMITH, CAROLINA BOURQUE, EMMA BURKEY, CHRISTOPHER CODY FLINT, MICHELLE ZIMMERMAN, PhD, ERIN RHODES, and JESSICA KROGMEIER, LORIN JEPPSEN, and REACT19, INC**

*Plaintiffs,*

-vs.-

**UNITED STATES OF AMERICA, UNITED STATES HEALTH RESOURCES AND SERVICES ADMINISTRATION, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, and JOHN DOES 1-3,**

*Defendants.*

Case No. 3:23-cv-01425-EEF-KDM

District Judge Elizabeth E. Foote

Magistrate Judge Kayla D. McClusky

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED VERIFIED COMPLAINT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

STANDARD OF REVIEW .................................................................................................. 3

ARGUMENT ...................................................................................................................... 4

   I.   PLAINTIFFS SUFFICIENTLY PLEADED A BASIS FOR STANDING ....................... 4

   II.  PLAINTIFFS SUFFICIENTLY STATED A CLAIM UPON WHICH RELIEF
       MAY BE GRANTED ........................................................................................ 8

      A.  Plaintiffs Sufficiently Stated a Procedural Due Process Claim ................................... 8

         1.  Plaintiffs Have Been Deprived of a Protected Property Interest .......................... 8

         2.  Plaintiffs Properly Identify CICP's Unconstitutional Procedures ....................... 14

      B.  Plaintiffs Adequately Pleaded a Substantive Due Process Claim .............................. 22

      C.  Plaintiffs Asserted a Valid Claim for a Declaratory Judgment .................................. 24

CONCLUSION ................................................................................................................. 25

CERTIFICATE OF SERVICE ........................................................................................... 26

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*All. Of Descendants of Tex. Land Grants v. United States,*
    37 F.3d 1478 (Fed. Cir. 1994) ................................................................................. 11

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................................. 3

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................................................. 3

*Blankenship v. Secretary of HEW,*
    587 F.2d 329 (6th Cir. 1978) ................................................................................. 19

*Bowlby v. City of Aberdeen, Miss.,*
    681 F.3d 215 (5th Cir. 2012) ................................................................................... 3

*Burlington Truck Lines, Inc.* v. *United States,*
    371 U.S. 156 (1962) ............................................................................................... 18

*Bustos v. Martini Club, Inc.,*
    599 F.3d 458 (5th Cir. 2010) ................................................................................... 3

*Camreta v. Greene,*
    563 U.S. 692 (2011) ................................................................................................. 6

*Christopher Village, Ltd. Pshp. v. Retsinas,*
    190 F.3d 310 (5th Cir. 1999) ................................................................................... 6

*Cities Servs. Co. v. McGrath,*
    342 U.S. 330 (1952) ............................................................................................... 11

*Consumer Data Indus. Ass'n v. Texas,*
    2023 U.S. App. LEXIS 19007 ................................................................................. 5

*Doe v. Ohio State Univ.,*
    219 F. Supp. 3d 645 (S.D. Ohio 2016) ................................................................. 20

*Ducharme v. Merrill-National Laboratories,*
    574 F.2d 1307 (5th Cir. 1978) ............................................................................... 12

*Ducre v. Executive Officers of Halter Marine, Inc.,*
    752 F.2d 976 (5th Cir. 1985) ................................................................................. 23

*Ducre v. Mine Safety Appliances,*
    573 F. Supp. 388 (E.D. La.1983) .......................................................................... 23

*Edwardsen v. Morton*,
   369 F. Supp. 1359 (D.D.C. 1973) ........................................................................... 23

*Firefighters' Ret. Sys. v. Grant Thornton,*
   *L.L.P.*, 894 F.3d 665 (5th Cir. 2018) ........................................................................ 7

*Flaim v. Med. Coll. of Ohio*,
   418 F.3d 629 (6th Cir. 2005) ................................................................................... 20

*Gibson v. Tex. Dep't of Ins.*,
   700 F.3d 227 (5th Cir. 2012) ............................................................................. 10, 14

*Goldberg v. Kelly*,
   397 U.S. 254 (1970) ................................................................................................. 10

*Goss v. Lopez*,
   419 U.S. at 567 .......................................................................................................... 9

*Harris Cnty. Texas v. MERSCORP Inc.*,
   791 F.3d 545 (5th Cir. 2015) ................................................................................... 25

*Hartford Fire Insurance Co. v. Lawrence, Dykes, Goodenberger, Bower & Clancy*,
   740 F.2d 1362 (6th Cir.1984) .................................................................................. 23

*Hewitt v. Helms*,
   459 U.S. 460 (1983) ............................................................................................ 10, 11

*Ileto v. Glock,*
   565 F.3d. 1140 (2003*)*............................................................................................. 23

*In re Aircrash in Bali*,
   684 F.2d 1301 (9th Cir. 1982) ................................................................................. 22

*Jacklitch v. Redstone Federal Credit Union*,
   463 F. Supp. 1134 (N.D. Ala. 1979) ....................................................................... 23

*Jefferson Disposal Co. v. Parish of Jefferson*,
   La. 603 F. Supp 1125 (E.D. La. 1985)..................................................................... 23

*Keller v. Dravo Corp.*,
   441 F.2d 1239 (5th Cir. 1971) ............................................................................ 11, 22

*Kentucky v. FHA*,
   2024 U.S. Dist. LEXIS 59960 .................................................................................... 6

iii

*Leuz v. Sec'y of Health & Human Servs.,*
    63 Fed. Cl. 602 (2005) ............................................................................... 12

*Logan v. Zimmerman Brush Co.,*
    455 U.S. 422 (1982) ............................................................................... 8, 9

*Marincas v. Lewis,*
    92 F.3d 195 (3rd Cir. 1996) ......................................................................... 20

*MMR Constructors, Inc. v. Dir., Off. Of Workers' Comp. Programs,*
    954 F.3d 259 (5th Cir. 2020) ....................................................................... 11

*Powell v. McCormack,*
    395 U.S. 486 (1969) .................................................................................... 6

*Public Cit. Health Research Grp. v. Auchter,*
    702 F.2d 1150 (D.C. Cir. 1983) ................................................................... 19

*Robinson v. Hunt Cty.,*
    921 F.3d 440 (5th Cir. 2019) ....................................................................... 25

*Ruckelshaus v. Monsanto Co.,*
    467 U.S. 986 (1984) .................................................................................. 23

*Sanchez v. R.G.L.,*
    761 F.3d 495 (5th Cir. 2014) ......................................................................... 5

*Sherbert v. Verner,*
    374 U.S. 398 (1963) .................................................................................. 10

*Smith v. Illinois Bell Telephone Company,*
    270 U.S. 587 (1926) .................................................................................. 19

*Taylor v. Sturgell,*
    553 U.S. 880 (2008) .................................................................................... 6

*TransUnion LLC v. Ramirez,*
    594 U.S. 413 (2021) ................................................................................ 4, 7

*Tulsa Prof'l Collection Serv. V. Pope,*
    485 U.S. 478 (1988) .................................................................................... 8

*United States ex rel Drummond,*
    886 F.3d 448 (5th Cir. 2018) ....................................................................... 19

*United States v. Bollinger Shipyards, Inc.,*

775 F.3d 255 (5th Cir. 2014) ................................................................................. 3

*Ware v. Hylton*,
3 U.S. 199 (1796) .............................................................................................. 11

*Webb's Fabulous Pharmacies, Inc. v. Beckwith*,
449 U.S. 155 (1980) ........................................................................................ 23

*Wisconsin v. Constantineau*,
400 U.S. 433 (1971) ........................................................................................ 10

*Wooten v. McDonald Transit Assocs., Inc.*,
788 F.3d 490 (5th Cir. 2015) ............................................................................. 3

**Statutes**
2 U.S.C. §§ 300aa-10 *et seq* ................................................................................ 12

28 U.S.C. § 2201(a) ........................................................................................... 25

33 U.S.C. §§ 901 *et seq* ...................................................................................... 12

42 C.F.R. § 110.20(a) ......................................................................................... 15

42 U.S.C. § 247d-6 .............................................................................. 1, 15, 16, 19

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 3

Wash. Rev. Code §§ 4.16.080, 7.72.060(3) ............................................................. 7

**Other Authorities**
*Data & Statistics*, Health Resources & Servs. Admin.,
https://www.hrsa.gov/sites/default/files/hrsa/vicp/vicp-stats-04-01-24.pdf ........................... 13

Doctrine of *contra non valentum* ............................................................................ 7

*Longshore and Harbor Workers' Compensation Act Frequently Asked Questions*, U.S. Dep't of
Labor, https://www.dol.gov/agencies/owcp/dlhwc/FAQ/lsfaqs ............................................. 12

*National Vaccine Injury Compensation Program*, Health Resources & Servs. Admin.,
https://www.hrsa.gov/vaccine-compensation .............................................................. 13
The Vaccine Injury Compensation Program: Addressing Needs and Improving Practices" (6th
Rep. 2000), https://www.congress.gov/106/crpt/hrpt977/CRPT-106hrpt977.pdf.................. 13

Plaintiffs Carolina Bourque, Emma Burkey, Christopher Cody Flint, Michelle Zimmerman, PhD, Jessica Krogmeier ("**Plaintiffs**"), herein submit their memorandum of law in opposition to Defendants' United States of America, United States Health Resources and Services Administration, United States Department of Health and Human Services, and John Does 1-3's ("**Defendants**") Motion to Dismiss Plaintiffs' Third Amended Verified Complaint. In support of this opposition, Plaintiffs state:

## <u>INTRODUCTION</u>

Defendants' Motion to Dismiss should be denied because Plaintiffs have standing to assert legal claims against Defendants, and Plaintiffs have pleaded claims upon which relief can be granted for constitutional violations inherent in the PREP Act.

The Court should reject Defendants' invitation to wade into the merits of any potential future litigation against vaccine manufacturers and distributors. Plaintiffs have standing in this action to assert claims against Defendants and to obtain a declaration that 42 U.S.C. §§ 247d-6d and 247d-6e are unconstitutional, both on their face and as applied to Plaintiffs. Defendants' speculation regarding what defenses may or may not be raised in future litigation against unnamed parties does not impact the viability of Plaintiffs' claims in this case. Plaintiffs do not have to litigate the merits of future suits today.

Plaintiffs have stated viable claims for procedural due process violations. Plaintiffs have been deprived of legal rights under state law, which are protected property interests. The PREP Act bars Plaintiffs from any meaningful relief for devastating and debilitating injuries which started within days of receiving a COVID-19 vaccine. Meanwhile, the process for purported compensation created by the PREP Act, the CICP, fails to provide even the most basic due process protections. The actual individuals deciding claims are unknown; the evidence or witnesses they

1

rely upon are unknown; the arguments they rely upon are unknown; there is no ability to challenge their evidence, witnesses, or arguments; there is no oral hearing or opportunity to be heard; damages are eliminated except for a de minimis amount of lost wages and payer-of-last-resort-medical-expenses; there is no obtainable record of any hearing or proceeding; and there is no deadline for CICP to make a determination or right to judicial review.

If one follows Defendants' logic, the absurdity of what they claim becomes clear: as long as the government deprives citizens of a recognized property right before that right has vested, they can do so without having to provide any protections before or after having done so. The argument presented by Defendants here, if applied to another scenario, would permit the government to pass legislation that declares that any residential home bought in the future by a citizen automatically becomes property of the government once it is purchased; no procedural protections need be put in place because the government deprived people of this property right *before* it had vested (before they had purchased a home). This is, of course, absurd and cannot stand.

Therefore, Plaintiffs have also adequately pleaded a substantive due process claim. The PREP Act's compensation scheme, which denies over 90% of claims and is severely underfunded, provides no "just and reasonable substitute" for the state law claims that have been extinguished. Defendants have cited Supreme Court cases upholding carefully crafted compensation schemes that are adequately funded and represent some attempt to balance competing interests and to provide procedural protections. The facts alleged in the Third Amended Complaint show that CICP is readily distinguishable and provides nothing of value in exchange for the extinguished claims.

If a blanket deprivation of long-standing common law and statutory rights is permitted with only a sham process put in place as the tradeoff satisfies due process, then Plaintiffs are hard

pressed to identify any deprivation that would be deemed violative of due process. Plaintiffs are entitled to a declaration that the provisions of the PREP Act at issue are unconstitutional on their face and as applied to Plaintiffs. Plaintiffs have adequately pleaded claims for violations of procedural and substantive due process. Consequently, Defendants' request to dismiss claims under the Declaratory Judgment Act should be denied as well.

## STANDARD OF REVIEW

A complaint should be dismissed only if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), a court reviews the complaint "accepting all well-pleaded facts as true, and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). A claim is plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 217 (5th Cir. 2012). The plausibility standard does not require a concrete showing of probability, but merely asks for "more than a sheer possibility that a defendant has acted unlawfully." *United States v. Bollinger Shipyards, Inc.*, 775 F.3d 255, 260 (5th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). In fact, "the factual allegations in the complaint need only 'be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015).

**ARGUMENT**

**I.      PLAINTIFFS SUFFICIENTLY PLEADED A BASIS FOR STANDING**

In their Third Amended Complaint, Plaintiffs request that the Court recognize the unconstitutionality of the PREP Act. Plaintiffs have pleaded a detailed and sufficient basis for their standing to do so. Defendants raise a convoluted argument, the focus of which centers around Plaintiffs' anticipated future cases against pharmaceutical companies who are not named in the present action and the defenses that Defendants speculate these companies could raise in opposition to such future actions. Defendants improperly assert that such defenses will bar Plaintiffs from success in future actions which would not even involve the present Defendants, and on this basis, Defendants contend that Plaintiffs lack standing in the present action due to a lack of redressability of their injuries. In essence, Defendants ask the Court to conflate redressability with a likelihood to succeed on the merits in future actions. To impose such a high standard on Plaintiffs merely to show standing to bring their claims runs afoul of the established standards in reviewing a complaint in the preliminary pleading stages. The appropriate standard in reviewing Defendants' Motion to Dismiss is to look at the allegations in the Third Amended Complaint and determine if Plaintiffs' claims as to the PREP Act and CICP program against Defendants "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp.*, 550 U.S. at 555 (internal citations omitted). Plaintiffs have more than met that standard.

Initially, Defendants overstate the constitutional minimum required to establish redressability. Plaintiffs must show "that the injury would ***likely be redressed*** by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (emphasis added). Plaintiffs are not required to establish that a favorable ruling would completely remedy any harm inflicted by the

PREP Act. When, as in this case, a favorable ruling could potentially reduce or limit the negative impact of legislation on a plaintiff, the redressability requirement has been satisfied. *Sanchez v. R.G.L.*, 761 F.3d 495, 506 (5th Cir. 2014) ("When establishing redressability, [a plaintiff] need only show that a favorable ruling could potentially lessen its injury; it need not definitively demonstrate that a victory would completely remedy the harm." (citation and quotation marks omitted)). In *Sanchez*, the Fifth Circuit Court of Appeals found that the plaintiff satisfied the redressability requirement even though the federal government was not a named defendant in a dispute concerning a request to return children to their mother in Mexico.[1] Likewise, in *Consumer Data Indus. Ass'n v. Texas*, 2023 U.S. App. LEXIS 19007 the Fifth Circuit found that the plaintiff established organizational standing even though the request for declaratory and injunctive relief would apply only to the Texas Attorney General in potential future enforcement actions, but not private parties requesting civil remedies under the same statute. *Consumer Data*, at *13 (unpublished decision) (citing *Sanchez*, 761 F.3d 495, 506 (5th Cir. 2014)).

Plaintiffs seek recognition that the PREP Act is violative of due process and therefore unconstitutional. Implicit in the order that Plaintiffs seek—that is, an order declaring unconstitutional those provisions of the PREP Act which create the scheme providing liability protection and a compensation process for COVID-19 vaccine injuries—is the striking down of the immunity provisions that Defendants contend pharmaceutical companies will raise as a defense. A declaration by this Court that the PREP Act is unconstitutional as applied to Plaintiffs establishes redressability of Plaintiffs' injuries. Such a declaration would provide Plaintiffs an avenue for relief in subsequent state or federal court litigation by helping remove an

---

[1] The Fifth Circuit ultimately concluded that the government should be joined as a party under Rule 19 of the Federal Rules of Civil Procedure. *Sanchez*, 761 F.3d at 506. Thus, even if the Court finds that it cannot provide complete relief based on the currently-named Defendants, the proper course would be to permit Plaintiffs leave to amend to join additional parties, not outright dismissal on standing grounds.

unconstitutional roadblock that currently precludes actions against manufacturers of COVID-19 vaccines. In fact, Defendants tacitly acknowledge this fact when they state that a favorable declaration by this Court could be cited as persuasive authority in future cases. (Dkt. 52 at 13 n.8) (citing *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011)). Defendants cannot ignore that a law that is determined by a federal court to be facially unconstitutional can thereafter be considered unconstitutional when applied to everyone. The notion that pharmaceutical companies can escape the consequences of the PREP Act being declared unconstitutional by a federal court simply because they are not parties to this action is farcical.

Contrary to Defendants' assertions, pharmaceutical companies do not have to be named defendants in the present case for Plaintiffs to litigate against them should the barrier to suing them be removed. A declaratory judgment can be a mechanism by which a plaintiff seeks additional relief. *See Kentucky v. FHA*, 2024 U.S. Dist. LEXIS 59960, *55 (quoting *Powell v. McCormack*, 395 U.S. 486, 499, 89 (1969) at 499, "A declaratory judgment can ... be used as a predicate to further relief, including an injunction."). In *Christopher Village, Ltd. Pshp. v. Retsinas*, 190 F.3d 310 (5th Cir. 1999), the Fifth Circuit determined that plaintiff's request for declaratory judgment overcame defendant's mootness argument because a declaratory judgment in that matter could still provide adequate relief. *Christopher Village*, at 315. There, the Fifth Circuit determined a declaratory judgment against HUD could be used by the plaintiff as a predicate for damages against HUD in a separate and subsequent action in the Court of Federal Claims. *Id.*

Moreover, Defendants cite *Taylor v. Sturgell*, 553 U.S. 880, 893 (2008), to reference the general rule precluding enforcing judgments against non-litigants. However, this case, which specifically addresses the ***exceptions*** to this rule, clearly indicates that statutory schemes are not binding on successive litigation if the scheme is not "consistent with due process," which the CICP

program plainly is not. *Id.* at 895. Thus, in their attempt to support their argument, Defendants instead further illuminate the illegality of precluding vaccine-injured claimants from seeking legal remedy under a statutory scheme that is in clear violation of due process.

Defendants next argue that were Plaintiffs to obtain a declaratory judgment, Plaintiff Bourque's suit would be outside the statute of limitations. It once again needs to be emphasized that the focus here should be on the viability of Plaintiffs' claims in this case and relief that they are seeking in this case—both of which pertain exclusively to these Defendants. In analyzing standing, "federal courts do not adjudicate hypothetical or abstract disputes." *TransUnion LLC*, 141 S. Ct. at 2203. Plaintiffs do not have to litigate the merits of their potential future suits against pharmaceutical companies in this venue. Whether or not Plaintiff Carolina Bourque will ultimately be successful in future litigation and whether any anticipated defenses will be successful is wholly irrelevant in this matter. In this matter, Plaintiffs are merely seeking to have the bar against them filing those actions (the PREP Act) removed. Furthermore, although Defendants contend that Plaintiff Carolina Bourque is subject to Louisiana's one-year statute of limitations, this is an over-simplification of Louisiana law, which contains a wealth of complex case precedent addressing situations under which these time limitations can be tolled, specifically the doctrine of *contra non valentum*.[2] Moreover, even if Defendants were correct with respect to Plaintiff Carolina Bourque, the remaining Plaintiffs are still within the statutes of limitations applicable in their states.[3]

In sum, in this action, Defendants are inappropriately attempting to force Plaintiffs to

---

[2] "Under Louisiana law, contra non valentum prevents the commencement of the running of prescription when the plaintiff does not know nor [sic] reasonably should know of the cause of action. This equitable doctrine demand[s] suspension when the plaintiff is effectively prevented [from] enforcing his rights for reasons external to his own will. The Louisiana Supreme Court has distinguished prescription from peremption in that contra non valentum does not apply to peremption." *Firefighters' Ret. Sys. v. Grant Thornton, L.L.P.*, 894 F.3d 665, 673 (5th Cir. 2018) (internal quotation marks omitted).
[3] Plaintiff Michelle Zimmerman, for example, resides in Washington, which has a three-year statute of limitations for negligence and product liability. Wash. Rev. Code §§ 4.16.080, 7.72.060(3).

litigate potential defenses that may be raised by their potential future adversaries. In this matter, at this early stage of the proceeding, and when accepting as true all factual allegations in the complaint as is required, Plaintiffs have sufficiently stated a claim to relief against these Defendants that is plausible on its face.

## II.   PLAINTIFFS SUFFICIENTLY STATED A CLAIM UPON WHICH RELIEF MAY BE GRANTED

### A.   Plaintiffs Sufficiently Stated a Procedural Due Process Claim

The Fifth Amendment states that no citizen may be deprived of life, liberty, or property without due process of law. In general, procedural due process claims require two inquiries: (1) "whether there exists a liberty or property interest which has been interfered with" by the government, and (2) "whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corr. V. Thompson*, 490 U.S. 454, 460 (1989).

The PREP Act unconstitutionally interferes with recognized property interests because it extinguishes Plaintiffs' common law and state tort claims that would otherwise have existed and, instead, replaces that property interest with a purported right to file a request for benefits in CICP.

#### 1.   *Plaintiffs Have Been Deprived of a Protected Property Interest*

Although Defendants contend that a cause of action is not a protected property interest, the Supreme Court has long recognized that a cause of action is indeed a species of property protected by the Due Process Clause. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982) ("[A] cause of action is a species of property protected by the Fourteenth Amendment's Due Process Clause."); *see also Tulsa Prof'l Collection Serv. V. Pope,* 485 U.S. 478, 485 (1988) (holding that "little doubt remains" that a cause of action is a constitutionally protected property interest); *Blackmon v. Am. Home Prods. Corp.*, 328 F. Supp. 2d 647, 656 (S.D. Tex. 2004) (recognizing that a claim brought under the Vaccine Act "is a property interest protected by the Due Process Clause"

(citing *Mullane v. Central Hanover Bank & Trust,* 339 U.S. 306 (1950)); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 807 (1985); *Duke Power Co. v. Carolina Envtl. Study Grp.*, 438 U.S. 59, 94 (1978) (stating that the common law-based tort claim eliminated by the Price-Anderson Act was a recognized property right and that the "Act impinges on that right by limiting recovery in major accidents" (Stewart, J., concurring)).

As the Supreme Court indicated in *Logan v. Zimmerman Brush Co.*, whether a right is one that is protected by due process can be determined by comparing it to other rights that courts have held merited due process protections. In *Logan*, for example, the Court determined that the plaintiff's state-created right to redress under the Illinois Fair Employment Practices Act claim was a constitutionally protected property right because it was at least as substantial as other recognized property interests such as a horse trainer's license, which the Court had previously held was a property interest entitled to due process protections. *Logan*, 455 U.S. at 431 ("[A]n FEPA claim, which presumably can be surrendered for value, is at least as substantial as the right to an education labeled as property in *Goss v. Lopez*[4]....Certainly, it would require a remarkable reading of [the terms 'liberty' and 'property'] to conclude that a horse trainer's license is a protected property interest under the Fourteenth Amendment, while a state-created right to redress discrimination is not." (internal citations and footnotes omitted)).

Likewise, Plaintiffs' property interests are entitled to due process protection given that they are more significant than the types of rights that courts have previously deemed sufficient to invoke due process protections. In particular, Plaintiffs' interest in bringing common law and statutory claims against the manufacturers of medical products that catastrophically injured them—i.e., their

---

[4] In *Goss v. Lopez*, 419 U.S. 565, 567 (1975), the Supreme Court affirmed that students facing temporary suspension from public school have property and liberty interests in continued schooling that are protected by the Fourteenth Amendment.

only chance at obtaining relief that would permit them to take steps toward recreating something resembling life before their injuries—are significantly more weighty than a horse trainer's license,[5] utility services,[6] high school education,[7] government employment,[8] continued employment at a public college,[9] tax exemptions,[10] drivers' licenses,[11] unemployment benefits,[12] welfare benefits,[13] one's "good name, reputation, honor, or integrity,"[14] as well as, in the prison context, good-time credits,[15] freedom from involuntary transfer to a mental hospital,[16] and remaining in the general prison population.[17,18]

It beggars belief and defies any semblance of logic that even prisoners cannot be deprived of one of their "narrow range of protected liberty interests"—the "liberty interest in remaining in the general prison population" without notice and an opportunity to be heard in a "nonadversary evidentiary review" process,[19] yet Plaintiffs are not entitled to any reasonable notice or hearing before having their only access to being made whole—that is, the right to seek reasonable compensation—removed after sustaining catastrophic injuries from products Defendants, *inter*

---

[5] *Barry v. Barchi*, 443 U.S. 55, 64 (1979).

[6] *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 4 (1978).

[7] *Goss*, 419 U.S. at 567.

[8] *Connell v. Higginbotham*, 403 U.S. 207 (1971).

[9] *Slochower v. Bd. of Higher Educ.*, 350 U.S. 551, 555 (1956).

[10] *Speiser v. Randall*, 357 U.S. 513, 523 (1958).

[11] *Bell v. Burson*, 402 U.S. 535 (1971).

[12] *Sherbert v. Verner*, 374 U.S. 398, 404 (1963).

[13] *Goldberg v. Kelly*, 397 U.S. 254, 255 (1970).

[14] *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971).

[15] *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974).

[16] *Vitek v. Jones*, 445 U.S. 480, 489 (1980).

[17] *Hewitt v. Helms*, 459 U.S. 460, 474 (1983).

[18] While procedural due process requirements are "flexible," they "call[] for such procedural protections as the particular situation demands." *Gibson v. Tex. Dep't of Ins.*, 700 F.3d 227, 239 (5th Cir. 2012) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). This situation and the resulting private interests at play demand adequate procedural protections.

[19] Plaintiffs note that any review done by the unidentified individuals at CICP, within HRSA and HHS, is not a "nonadversary" review. These individuals are working for the same Executive branch of the government that developed, funded, authorized, licensed, promoted, and mandated the products at issue.

*alia*, developed, funded, advertised, promoted, mandated, and immunized from liability, and replaced redress in court with a kangaroo court-styled purported compensation scheme. *Hewitt v. Helms*, 459 U.S. 460, 466, 467, 471 (1983).

Moreover, in cases far more recent than the 1970s era cases cited by Defendants, Federal Circuits have agreed that causes of action are indeed a type of property implicated under the Fifth Amendment:

> The claimants do not in this suit allege a taking of the land in Texas itself. **Rather they allege that the United States took away their legal right to sue for compensation** for that land. Because **a legal cause of action is property within the meaning of the Fifth Amendment,** *Cities Servs. Co. v. McGrath*, 342 U.S. 330, 335-36 (1952); *Ware v. Hylton*, 3 U.S. 199, 245 (1796), **claimants have properly alleged possession of a compensable property interest**.

*All. Of Descendants of Tex. Land Grants v. United States*, 37 F.3d 1478, 1481 (Fed. Cir. 1994) (emphasis added).

The cases cited by Defendants do not hold persuasively to the contrary. In *Keller v. Dravo Corp.*, 441 F.2d 1239, 1242 (5th Cir. 1971), for example, the Fifth Circuit held abolition of non-vested rights is especially innocuous if one remedy is substituted for another. Crucially, however, the plaintiff in *Keller* had **already received all the benefits to which he was entitled** under the Longshoremen's and Harbor Workers' Compensation Act and, most significantly, the due process protections afforded to workers under that Act, including the ability to appeal adverse decisions to a federal appeals court, are **vastly** more equitable than those afforded by CICP. *See, e.g.*, *MMR Constructors, Inc. v. Dir., Off. Of Workers' Comp. Programs*, 954 F.3d 259 (5th Cir. 2020) (affirming holding of benefits review board that reversed an administrative law judge's decision to deny benefits to employee). Moreover, the Act ensures workers injured on navigable waters receive compensation for wage loss benefits (including total and partial temporary and permanent

11

disability), comprehensive medical benefits, and vocational rehabilitation benefits (including counseling, job modification, job placement, skills testing, training, etc.), including provision for attorneys' fees[20]—unlike CICP which requires "serious injury" and only reimburses lost wages of up to $50,000 and payor-of-last-resort medical expenses. (Dkt. 49 at ¶ 132(m).)

The case *Ducharme v. Merrill-National Laboratories*, 574 F.2d 1307 (5th Cir. 1978) (per curiam) is likewise inapposite. There, the Court upheld the Swine Flu Act against a challenge but, critically, that Act allowed for individuals to be heard in federal court; it just limited the defendant that could be sued to the United States exclusively. *Id.* at 1309. Thus, there, plaintiffs' due process rights were sufficiently protected by virtue of the fact that they were able to prosecute their tort claims for vaccine injury in federal court. Of note, the *Ducharme* Court specifically observed that the Swine Flu Act "[c]reate[d] a cause of action against the United States based on negligence, strict liability or breach of warranty for damages arising out of the act of a program participant"— something which is strictly prohibited by the PREP Act here. *Ducharme*, 574 F.2d at 1309 . To the contrary, all causes of action against anyone even tangentially related to the administration of the medical products that injured Plaintiffs have been barred.[21]

Finally, with respect to *Leuz v. Sec'y of Health & Human Servs.*, 63 Fed. Cl. 602 (2005), which Defendants cite, that case too is distinguishable. While *Leuz* upheld the constitutionality of the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa-10 *et seq.*, ("**NCVIA**"), determining it did not violate the Due Process or Equal Protection clauses of the Fifth Amendment, it is once again crucial to note that the program created by the NCVIA, the Vaccine Injury

---

[20] 33 U.S.C. §§ 901 *et seq.*; *Longshore and Harbor Workers' Compensation Act Frequently Asked Questions*, U.S. Dep't of Labor, https://www.dol.gov/agencies/owcp/dlhwc/FAQ/lsfaqs.

[21] As noted in the Third Amended Complaint, the only exception is a cause of action for "willful misconduct" that cannot be brought by a plaintiff unless and until the U.S. Government brings the claim first. (Dkt. 49 at 4 n.2.)

Compensation Program ("**VICP**"), for all of its flaws,[22] affords much more ability to have notice and the opportunity to be heard than does CICP. For example, contrary to CICP, VICP is a "no fault alternative to the traditional legal system" where claims are heard by an identified and credentialed special master who drafts decisions, following the submission of expert testimony and cross-examination of that testimony, explaining his reasoning with findings of fact and conclusions of law and, crucially, whose decision can be appealed to a federal court; a vaccine injury table is provided which allows certain vaccine injuries to be quickly compensated; VICP allows for attorneys' fees which ensures applicants can obtain adequate representation; and VICP has paid out nearly five billion dollars in compensation.[23] In light of the flaws and serious deficiencies of CICP, it is extraordinarily unlikely that the *Leuz* Court would come to the same conclusion regarding CICP as it relates to the constitutionality of the due process it affords petitioners.

Plaintiffs have also properly alleged a liberty interest in the ability to seek proper relief from their injuries; there are numerous glaring issues with Defendants' claim that "Plaintiffs do not allege that they have been deprived of the right to pursue CICP claims in accordance with the PREP Act." (Dkt. 52-1, at 25). First, the thrust of Plaintiffs' argument is that the CICP program as it is designed and intended to function is constitutionally deficient but, even if it were functioning as promised, in practice it is violating Plaintiffs' due process rights. In what is suggestive of a failure-to-exhaust-administrative-remedies-type argument, Defendants cite the fact that one Plaintiff's claim was found compensable and three other Plaintiffs are currently awaiting a decision

---

[22] *See* "The Vaccine Injury Compensation Program: Addressing Needs and Improving Practices" (6th Rep. 2000), https://www.congress.gov/106/crpt/hrpt977/CRPT-106hrpt977.pdf.

[23] *National Vaccine Injury Compensation Program*, Health Resources & Servs. Admin., https://www.hrsa.gov/vaccine-compensation; 42 U.S.C. §§ 300aa-10 *et seq.*; *Data & Statistics*, Health Resources & Servs. Admin., https://www.hrsa.gov/sites/default/files/hrsa/vicp/vicp-stats-04-01-24.pdf at 9 (last updated Apr. 1, 2024).

from CICP; however, Plaintiff Cody Flint did receive a final decision from CICP—a denial—without either notice or an opportunity to be heard. He also received a determination of his request for reconsideration—again a denial—again without notice or an opportunity to be heard. Cody is now at a dead end and has no other recourse. Defendants will not even disclose who the medical professional(s) was who determined Cody's claim to be ineligible. As noted, even in response to FOIAs, Defendants refuse to identify the individuals deciding these claims. (Dkt. 49 at 32.) Given all of the above, Plaintiffs have adequately plead the deprivation of a property interest.

### 2.      *Plaintiffs Properly Identify CICP's Unconstitutional Procedures*

Defendants next take on the unenviable position that, despite their fifty-one-page Third Amended Compliant that, among other things, enumerates a nineteen-item list of CICP's due process deprivations, Plaintiffs have failed to identify "the existence of any constitutional inadequacy in the CICP procedures." (Dkt. 52-1 at 26.)

Three factors are usually considered when evaluating a procedural due process claim:

> **First**, the private interest that will be affected by the official action; **second**, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; **and finally**, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Gibson v. Tex., Dep't of Ins.*, 700 F.3d at 239 (5th Cir. 2012) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) (emphasis added). When subjected to the *Mathews* factors, the PREP Act violates Plaintiffs' procedural due process rights as a matter of law.

First, as addressed *supra* Section II.A.1, Plaintiffs have identified the private interest that has been affected by governmental action: Plaintiffs' common law and state tort claims and their interest in having access to an appropriate process for obtaining compensation. (Dkt. 49 at ¶¶ 142, 144, 148.)

Plaintiffs have also delineated, in detail, the erroneous deprivation the government's actions have had on Plaintiffs' private interests as well as the value of additional or substitute procedural safeguards. These include, for example:

> the right to know the identity/credentials of the individuals actually deciding their claims; the identity of any of the government's expert witnesses relied upon to challenge their claims; any opportunity to obtain any discovery; any opportunity to challenge evidence used against them; any opportunity to challenge witnesses relied upon by the government to deny their claims; any opportunity to obtain copies of any expert reports relied upon by the government; any opportunity to challenge experts relied upon to deny their claims; any opportunity to present expert witnesses; any opportunity to challenge the government's arguments; notice and any opportunity to have a hearing; the ability to obtain compensation for their damages because an individual must suffer a "serious injury," and even then, can only recover annual lost wages of up to $50,000 and payor-of-last-resort-medical-expenses, and CICP cannot even pay these patently insufficient damages to even a tiny fraction of claimants due to underfunding; the ability to obtain legal representation in most instances due to the unconscionable cap on damages; a written record of any proceedings; a date by which a claim will be decided or any alternative for obtaining compensation irrespective of the duration CICP takes to decide a claim; the ability to seek any judicial review in a court of law; and the right to present claims before a civil jury.

(Dkt. 49 ¶ 152; *see also id.* ¶ 132.) Nothing Defendants cite or quote in their brief alleviates these glaring due process issues. In fact, Defendants cite the very aspects of the PREP Act that Plaintiffs contend are unconstitutional to justify CICP's egregious due process violations. For example, Defendants' point out that 12.1% of claims are denied "based on failure to show that the covered countermeasure directly caused a covered injury," and they justify it by stating this "reflects the standard set forth in the PREP Act and regulations, *see* 42 U.S.C. § 247d-6e(b)(1); 42 C.F.R. § 110.20(a)." (Dkt. 52-1, at 27.) Even if true, this in no way means that Defendants are being reasonable in their administration of the CICP program nor does it prove that Plaintiffs have been provided due process. To the contrary, it simply means that Defendants are using an

unconstitutional statute as justification to deny due process rights to COVID-19 vaccine injured. Notably, one glaring reason for claimants' purported inability to show a covered counter measure caused their injury is because Defendants refuse to create a CICP COVID-19 injury table, despite the Department of Health and Human Services' ("**HHS**") statutory obligation to do so.[24] HHS's arbitrary and inexplicable choice not to do so, despite the passage of more than three years since the vaccine introduction to the market, forces those requesting benefits to meet a much higher burden of proving injury. (Dkt. 49 ¶¶ 123-125.) Defendants' further suggestion that the finding that 40 claims out of 12,854—or 0.3%—have been deemed compensable demonstrates due process is so wholly detached from legal principles of due process and reality that it verges on the absurd.

In their arguments, Defendants appear to once again allude to the concept of administrative exhaustion, suggesting that those Plaintiffs whose claims are still pending have no right to complain because they may still have the opportunity for due process insofar as they ultimately may be awarded compensation. There are two glaring flaws to this argument. First, the deprivation of due process has already happened by virtue of flaws already noted, including the lack of ability to know who will determine their claims, when they will be decided, whether the individual reviewing them has conflicts of interest or what medical and scientific standards will be applied, the unconscionably low cap on recovery, and the inability to have claims heard before a court or jury. Whether or not the Plaintiffs whose claims are pending are awarded compensation will not undo these due process violations. Furthermore, and significantly, Plaintiff Cody Flint has already

---

[24] 42 U.S.C. § 247d-6e(b)(5)(A) ("The Secretary shall by regulation establish a table identifying covered injuries that shall be presumed to be directly caused by the administration or use of a covered countermeasure and the time period in which the first symptom or manifestation of onset of each such adverse effect must manifest in order for such presumption to apply. The Secretary may only identify such covered injuries, for purpose of inclusion on the table, where the Secretary determines, based on compelling, reliable, valid, medical and scientific evidence that administration or use of the covered countermeasure directly caused such covered injury.).

received a final decision that was reached without allowing him notice or opportunity to be heard. (Dkt. 49 ¶¶ 57-66, 128.) He has been denied due process of law for all of the reasons stated earlier but additionally because there is no longer any opportunity for him to receive any additional relief from CICP or elsewhere—aside from the instant case—that will permit him due process of law.

With respect to CICP's secretive processes, it is rich that Defendants suggest CICP is an open process (due to the vague FAQs on its website) when its own actions in refusing to disclose data requested via FOIA seeking to shed light on the individuals involved in deciding CICP claims provides definitive proof to the contrary. (Dkt. 49 ¶ 109.) But regardless of the content or volume of information that Defendants have provided on their website, the truth is that Defendants are keeping secret all of the information that actually matters for purposes of due process—for example, the medical and scientific texts, standards, and experts they are using or relying on, the identities of the individuals consulting on or having a part in the decision process and reconsideration process, the internal operating procedures and policies of those handling CICP claims, as well as virtually everything else about the inner workings of CICP. (Dkt. 49 ¶¶ 108-117.)

Defendants repeatedly point to the only CICP-involved individuals that HRSA has identified—Dr. George Reed Grimes, MD MPH, who signs CICP determination letters, and Suma Nair, PhD, MS, Associate Administrator of the Health Systems, who signs reconsideration letters—suggesting that Plaintiffs do not need to learn the names of any other staff. Defendants do not seriously contend that Dr. Grimes and Dr. Nair are the only medical professionals that are weighing in on Plaintiffs' CICP claims.[25] In fact, Defendants concede that reconsideration requests

---

[25] Were that the case, the fact that a mere two individuals—one of whom does not even possess a medical degree—are responsible for deciding the over 10,000 pending COVID-19-related claims, it would be a clear violation of claimants due process in light of just the sheer amount of time it would take for two individuals to review, with reasonable diligence, all of medical records submitted.

are reviewed by a "a panel of qualified reviewers independent from the CICP," who then make a recommendation to Dr. Nair, who makes the final reconsideration decision. (Dkt. 52-1 at 30.) It is a further violation of due process to prohibit Plaintiffs from knowing the identities of these "qualified reviewers." At a minimum, due process demands that Plaintiffs be permitted to review and respond to the content of these reviewers' recommendations. *Burlington Truck Lines, Inc*. v. *United States*, 371 U.S. 156, 168 (1962) (holding that an agency must examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made."). Defendants have proffered utterly no reason as to why they will not provide this information—even redacting the names of the reviewers—which alone is suggestive of Defendants' purposeful intent to shroud the program in secrecy.

Additionally, "[a] fundamental component of due process is the right to a hearing before an impartial decisionmaker who 'does not prejudge the evidence and who cannot say, with . . . utter certainty . . . how he would assess evidence he has not yet seen.'" *Gonzales v. Johnson*, 994 F. Supp. 759, 763 (N.D. Tex. 1997). Here, there is no hearing (which alone renders the PREP Act unconstitutional). There is also plainly no impartial decision-maker since the same department that licensed, mandated, and has continually sworn to the safety of this product, is also deciding whether to compensate claims that would conflict with its prior positions regarding these products.[26] The government refuses to identify these individuals who are serving as judge and jury

---

[26] Plaintiffs' understanding from the limited information available to the public about CICP is that the actual decisionmakers are HHS personnel. HHS is the parent agency of FDA (the agency responsible for authorizing and approving the COVID-19 vaccines) and of CDC (the agency responsible for promoting the COVID-19 vaccines). This is a plain conflict of interest. If HHS employees granted numerous requests for benefits acknowledging that there is "compelling, reliable, valid, medical, and scientific evidence that the COVID-19 vaccine directly caused [each] injury," this would be highly problematic for both FDA and CDC. In addition, there are government employees who are on the patents for COVID-19 vaccines. Hence, the only information available points to the antithesis of impartial decisionmakers. A Congressman recently acknowledged this conflict of interest in a hearing, stating about HHS: "We have the same agency funding the research, approving, and mandating, and finally adjudicating the COVID-19 vaccine [injury claims] .…

in CICP, which is inherently unfair and renders the process completely unreliable. *See Mathews v. Eldridge*, 424 U.S. 319 (1976) at 343 (stating that "the fairness and reliability of the [challenged] procedures" is a critical factor in determining whether procedural due process has been satisfied).

With respect to the timeframe of determinations, resolution of just ninety claims a month and zero timetable as to when the remaining pending claims will be decided does not meet due process requirements. *Public Cit. Health Research Grp. v. Auchter*, 702 F.2d 1150 (D.C. Cir. 1983) ("Delays that might be altogether reasonable in the sphere of economic regulation are less tolerable when human lives are at stake. This is particularly true when the very purpose of the governing Act is to protect those lives." (citations omitted)); *see also Smith v. Illinois Bell Telephone Company*, 270 U.S. 587, 591 (1926) (holding that a state commerce commission's delay unconstitutionally deprived a telephone company of property without due process of law); *Blankenship v. Secretary of HEW*, 587 F.2d 329 (6th Cir. 1978) (finding that 220 days was an unreasonable wait time for a decision on public benefits). Even if the years' long wait that Plaintiffs Cody Flint and Emma Burkey endured were not violative of due process,[27] Defendants wholly refuse to give any time frame for the remaining 10,000 plus pending claims other than vague assurance that "CICP has been increasing its pace of resolving COVID-19 claims. (Dkt. 52-1 at 31.) As the Fifth Circuit has observed, "justice delayed is justice denied." *United States ex rel Drummond*, 886 F.3d 448, 450 (5th Cir. 2018) (internal quotation marks omitted).

---

It concentrates too many government functions in the same unaccountable hands." *See* Transcript of *House Oversight and Accountability Select Subcommittee on the Coronavirus Pandemic Holds Hearing on Assessing Vaccine Safety Systems*, February 15, 2024. (Dkt. 49-1 at 104).

[27] Defendants suggest this time frame is on par with civil litigation, however a two-years wait is plainly absurd for an administrative process whose purpose is purportedly to "provid[e] **timely**, uniform, and adequate compensation…" 42 U.S.C. § 247d-6e(a) (emphasis added). Further, the reason civil litigation takes so long is due to the procedural safeguards that are put into place (e.g., exchange of discovery, expert testimony, opportunity to be heard at trial, etc.). Those safeguards are wholly absent here and so there is no reason, or even viable excuse provided by Defendants, why the CICP process should take such an exceedingly long amount of time.

With respect to the ability to be heard, just because Plaintiffs theoretically can "submit whatever written evidence they would like," (Dkt. 52-1, at 33), does not mean that it is being reviewed or considered by any individual let alone one with sufficient expertise. Again, there is no indication that Plaintiff Cody Flint's medical evidence was actually reviewed because CICP's decisions do not explain their medical, scientific, or logical reasoning and they certainly do not do so in such a way that provides a complete and comprehensive record with the decision makers' reasoning, such that it can be fairly and appropriately reviewed on reconsideration. The ability to create a record for appeal has long been recognized as a cornerstone of justice. *See Marincas v. Lewis*, 92 F.3d 195 (3rd Cir. 1996) (holding that "two of the most basic of due process protections [are] a neutral judge and a complete record of the proceeding"); *see also Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 636 (6th Cir. 2005) (noting that "[i]t is always wise to produce some sort of record of the proceedings, whether it be a transcript or recording," as "fundamental fairness counsels that if the university will not provide some sort of record, it ought to permit the accused to record the proceedings if desired."); *Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 657 (S.D. Ohio 2016) ("Due process may require at least the ability to create a record of the proceeding.") But why would CICP decisionmakers create such a thorough record? After all, when a claimant requests reconsideration (which is unappealable) of the record and CICP's determination, that process is likewise shrouded in secrecy. At no point in time do claimants have the opportunity or possibility of actually having their complaints heard in an open forum.

In sum, Plaintiffs have more than sufficiently identified a plethora of deficiencies in CICP such that the entire program must be struck down as violative of Plaintiffs' due process rights.

Finally, the third prong in the *Mathews* test examines "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute

procedural requirement would entail." *Mathews*, 424 U.S. at 335. This third prong typically focuses on the financial and administrative burden on the government in implementing additional procedural safeguards. *See id.* (including in the government's interest "the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail").

Contrary to Defendants' assertions, this factor weighs plainly in favor of Plaintiffs. Here, striking down the PREP Act to restore pre-existing procedural safeguards will impose no additional financial burden on the federal government. In fact, it will have the opposite effect because the government will no longer need to administer CICP or pay out any benefits to claimants therein. The claimants could instead seek compensation under appropriate due process safeguards, as they could for centuries prior, in court against the private parties that earned billions of dollars (mostly taxpayer money) selling the products (developed with billions of dollars of taxpayer money) which caused their harm.

Defendants ignore the massive financial benefit to the government that would result in the striking of the PREP Act and in holding manufacturers liable for the injuries caused by the products they profited from, claiming instead that the government's interest in maintaining the PREP Act is to encourage the availability of PREP Act immunity for the sake of public health. However, if COVID-19 vaccines are as safe as Defendants routinely and steadfastly reiterate,[28] then

---

[28] *See, e.g., Safety of COVID-19 Vaccines*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/safety/safety-of-vaccines.html (last updated Nov. 3, 2023); *EXCLUSIVE: CDC Found Evidence COVID-19 Vaccines Caused Deaths*, Epoch Times (May 1, 2024), https://www.theepochtimes.com/article/exclusive-cdc-found-evidence-covid-19-vaccines-caused-deaths-5632265?ea_src=frontpage&ea_med=premium-featured-0 ("CDC officials in a letter to The Epoch Times dated June 13, 2023, said that **there were no deaths reported to the VAERS for which the agency determined 'the available evidence' indicated Moderna or Pfizer vaccination 'caused or contributed to the deaths**.'" (emphasis added)); *Covid Vaccines Not Linked to Fatal Heart Problems in Young People, CDC Finds*, NBC News (Apr. 11, 2024), https://www.nbcnews.com/health/health-news/cdc-finds-covid-vaccines-not-linked-sudden-death-young-people-rcna147188.

pharmaceutical manufacturers, which have profited to the tune of billions of dollars from COVID-19 vaccines—should have no difficulty bearing the cost of any harms, claimed by Defendants to be slight, that their products cause.

**B.      Plaintiffs Adequately Pleaded a Substantive Due Process Claim**

Defendants claim that Plaintiffs have not asserted a valid substantive due process claim based on their assessment that there is no protected property interest in causes of action at state law. To support this conclusion, they again rely on *Keller v. Dravo Corp.* to reiterate their point that there is absolutely no vested property interest in state law tort claims. 441 F.2d 1239 (5th Cir. 1971). As stated above, *Keller* involved an exclusive remedy program that was considerably less restrictive than CICP, specifically the Longshore and Harbor Workers Compensation Act. Under this Act, claimants have the right to request a formal hearing with an administrative law judge if they are not able to reach an agreement on settlement of their injury claim as well as the right to appeal to federal court. This is starkly different from the CICP program, which offers no opportunity whatsoever for a formal hearing before any impartial decision maker. In essence, Defendants hinge their argument on a case involving a program that is substantially less violative of constitutionally protected rights (and thus had a tremendously weaker argument for challenging due process) than the one at bar.

Furthermore, Defendants present this notion as if it is a well-settled issue across the United States when that could not be further from the truth. This can be seen in cases more recent than *Keller*. For example, in 1981, regarding wrongful death claims, the Ninth Circuit held that "there is no question that claims for compensation are property interests that cannot be taken for public use without compensation." *In re Aircrash in Bali*, 684 F.2d 1301 (9th Cir. 1982). In 1984, the Supreme Court noted, "we are mindful of the basic axiom that "[property] interests . . . are not

created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986 (1984) (quoting *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 161 (1980)). Even federal courts within Louisiana have noted conflicting rulings where protected property interests in state law causes of action are concerned. For example, *Jefferson Disposal Co. v. Parish of Jefferson*, La. 603 F. Supp 1125 (E.D. La. 1985) states, "this Court recognizes that there is case law supporting [plaintiff's] contention that one has a vested property right in a cause of action once it has somehow accrued. *See Hartford Fire Insurance Co. v. Lawrence, Dykes, Goodenberger, Bower & Clancy*, 740 F.2d 1362, 1367 (6th Cir.1984); *Ducre v. Mine Safety Appliances*, 573 F. Supp. 388, 392 (E.D. La.1983), *rev'd in part on other grounds Ducre v. Executive Officers of Halter Marine, Inc.*, 752 F.2d 976 (5th Cir. 1985) (constitutional issue was not discussed); *Edwardsen v. Morton*, 369 F. Supp. 1359 (D.D.C. 1973); *Jacklitch v. Redstone Federal Credit Union*, 463 F. Supp. 1134, 1139 n.2 (N.D. Ala. 1979). Those cases are conceptually difficult to reconcile with cases that hold that a plaintiff does not have a vested property right in a claim unless there is a final nonreviewable judgment." *Jefferson Disposal Co.* 603 F. Supp. 1137 n.31. The *Jefferson* Court further noted that, in *Ducharme* (another case repeatedly cited by Defendants to assert that there is no vested property interest in state law tort claims which is addressed above), the court "ended its discussion there without discussing whether a so-called vested right in a cause of action would mandate constitutional protection under the due process clause of the Fifth Amendment." *Id.*

Finally, Defendants cite *Ileto v. Glock* to assert that Congress may make laws granting liability immunity "as long as the legislature was pursuing a rational policy." 565 F.3d, 1140 (2003). Again, Defendants hinge a bold, sweeping statement on a case with vastly different factual

circumstances. *Ileto* dealt with liability immunity given to gun manufacturers against tort law claims resulting from the criminal use of a firearm. Because the plaintiffs' claims did not assert manufacturing defects as a contributing factor to their injuries, it is easy to follow the court's logic in that case that the tort claims brought by the plaintiffs were not foreseeable. Tort claims for injuries related to COVID-19 vaccination are vastly different. While no federal regulation has ever been enacted requiring citizens to purchase a firearm, millions of Americans were, at various times, subject to various federal mandates requiring them to receive a COVID-19 vaccine. Furthermore, virtually all mainstream media outlets and federal health regulators assured the public that COVID-19 vaccines were safe and effective. Given the speed with which COVID-19 vaccines were developed and manufactured, not only is it logical but it is also expected (and thus foreseeable) that a claimant who has been vaccine-injured might allege manufacturing defects as a contributing factor to their injury. Thus, while there may have been a "rational basis" for granting immunity to gun manufacturers in *Ileto*, that basis does not transfer to the facts at hand as simply as Defendants present in their motion to dismiss.

### C.     Plaintiffs Asserted a Valid Claim for a Declaratory Judgment

Plaintiffs are entitled to a declaration that the provisions of the PREP Act pertaining to CICP are unconstitutional on their face and as applied to Plaintiffs. Plaintiffs have adequately pleaded claims under Counts II and III for violations of procedural and substantive due process. *See supra* Sections II.A and II.B. For the same reasons, Plaintiffs have stated a claim for relief under the Declaratory Judgment Act. Defendants' Motion to Dismiss Count I should thus be denied.

The Declaratory Judgment Act states in pertinent part that "[i]n a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading,

24

may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Defendants cite *Harris Cnty. Texas v. MERSCORP Inc.*, 791 F.3d 545, 552 (5th Cir. 2015) for the proposition that the Declaratory Judgment Act, standing alone, does not create a separate cause of action. (Dkt. 52-1 at 38.) The plaintiffs in *Harris Cnty. Texas* attempted to use the Declaratory Judgment Act as a vehicle to assert a federal cause of action for violation of a Texas state statute. *Id.* at 552-553.

Here, by contrast, Plaintiffs allege that the PREP Act violates the U.S. Constitution. (Dkt. 49, ¶¶ 140-171.) Count I seeks relief for these violations of the federal Constitution under the Declaratory Judgment Act. (*Id.* ¶¶ 134-139.) The Fifth Circuit has distinguished breach of contract cases, in which separate requests for declaratory judgment are dismissed as superfluous, from cases involving constitutional claims. *Robinson v. Hunt Cty.*, 921 F.3d 440, 450-51 (5th Cir. 2019). In the *Robinson* case, the defendants argued that the plaintiff's request for declaratory judgment was duplicative of its Fifth and Fourteenth Amendment claims. The trial court dismissed the substantive claims and the request for declaratory judgment. On appeal, the Fifth Circuit reversed the trial court's decision on the substantive constitutional claims ***and*** in the request for declaratory relief. *Id.* at 451. For the same reasons the Court should deny Defendants' motion to dismiss the substantive constitutional claims of Counts II and III and the Court should likewise deny their motion to dismiss the declaratory relief sought by Count I.

<u>CONCLUSION</u>

In conclusion, Plaintiffs have adequately plead standing and their substantive claims. For all of the foregoing reasons, Defendants' motion to dismiss should be denied.

Dated: May 6, 2024                                          Respectfully submitted,

/s/ *Charlotte Y. Bergeron*                                 /s/ *Aaron Siri*
Charlotte Y. Bergeron, Esq.                                 Aaron Siri, Esq.* [Trial Attorney]
Louisiana Bar Number: 24293                                 New York Bar Number: 4321790
1040 Audubon Street                                         Elizabeth A. Brehm, Esq.*
Lake Charles, LA 70605                                      New York Bar Number: 4660353
Tel: (225) 229-7135                                         Catherine Cline, Esq.*
cbergeronlaw@gmail.com                                      Florida Bar Number: 125955
                                                            SIRI & GLIMSTAD LLP
                                                            745 Fifth Ave, Suite 500
                                                            New York, NY 10151
                                                            Tel: (888) 747-4529
                                                            Fax: (646) 417-5967
                                                            aaron@sirillp.com
                                                            ebrehm@sirillp.com
                                                            ccline@sirillp.com

                                                            /s/ *Walker Moller*
                                                            Walker D. Moller, Esq.*
                                                            Texas Bar Number: 24092851
                                                            SIRI & GLIMSTAD LLP
                                                            1005 Congress Avenue
                                                            Suite 925-C36
                                                            Austin, TX 78701
                                                            Tel: (888) 747-4529
                                                            Fax: (646) 417-5967
                                                            wmoller@sirillp.com

                                                            *Attorneys for Plaintiffs*
                                                            **Admitted pro vac vice.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 6, 2024, a copy of the foregoing document was filed

electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent

to all counsel of record by operation of the Court's electronic filing system.

                                                            /s/ *Aaron Siri*
                                                            Aaron Siri