UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

ALICIA SMITH ET AL                  CIVIL ACTION NO. 23-1425

VERSUS                              JUDGE EDWARDS

US HEALTH RESOURCES &               MAGISTRATE JUDGE MCCLUSKY
SERVICES ADMINISTRATION ET AL

## MEMORANDUM RULING & ORDER

Before the Court is the U.S. Department of Health & Human Services ("HHS"), the U.S. Health Resources & Services Administration ("HRSA"), the United States of America, and John Does' (collectively, "Defendants"), Motion to Dismiss the Third Amended Complaint.[1] Defendants assert that Alicia Smith ("Smith"), Carolina Bourque ("Bourque"), Emma Burkey ("Burkey"), Christopher C. Flint ("Flint"), Michelle Zimmerman ("Zimmerman"), Erin Rhodes ("Rhodes"), Jessica Krogmeier ("Krogmeier"), Lorin Jeppsen ("Jeppsen"), and React19 Inc. (collectively, "Plaintiffs"), fail to plead a basis for standing and fail to state a claim upon which relief may be granted. Plaintiffs filed a Memorandum of Law in Opposition to Defendants' Motion to Dismiss.[2] Defendants filed a Reply Memorandum in Support of their Motion to Dismiss.[3] Having carefully considered the foregoing memoranda, attached exhibits, and applicable law, the Court **GRANTS** Defendants' Motion to Dismiss.

---

[1] R. Doc. 53.
[2] R. Doc. 58.
[3] R. Doc. 59.

## BACKGROUND

**Public Readiness and Emergency Preparedness Act**

In 2005, Congress enacted the Public Readiness and Emergency Preparedness ("PREP") Act, Pub. L. No. 109-148, 119 Stat. 2680, Division C (2005) (codified at 42 U.S.C. §§ 247d-6d, 247d-6e), to encourage the development and deployment of medical countermeasures to combat public health emergencies.[4] The PREP Act's provisions come into effect when the Secretary of Health and Human Services issues a declaration after making the determination that a disease, health condition, or other threat to health constitutes a public health emergency or there is a credible risk that it may in the future constitute such an emergency and that the manufacture, testing, development, distribution, administration, or use of one or more countermeasures is covered.[5] Such a declaration triggers immunity from liability "with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure," with the exception of claims for willful misconduct.[6]

**Countermeasures Injury Compensation Program**

The Department of Health and Human Services ("HHS") and its component, the Health Resources and Services Administration ("HRSA"), promulgated

---

[4] *See* Cong. Rsch. Serv., Compensation Programs for Potential COVID-19 Vaccine Injuries 2 (Oct. 20, 2021), https://crsreports.congress.gov/product/pdf/LSB/LSB10584.

[5] 42 U.S.C. § 247d-6d(b)(1).

[6] Id. § 247d-6d(a)(1); Immunity extends to the United States and those who produce, sell, distribute, plan and execute programs for, prescribe, administer, or dispense those covered countermeasures. Id. § 247d-6d(i)(2). As an exception to this immunity, the Act provides "an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct." Id. § 247d-6d(d)(1).

regulations establishing and governing the Countermeasures Injury Compensation Program ("CICP").[7] The regulations provide that an individual who suffered a serious injury directly caused by a covered countermeasure, or the survivor of a decedent whose death was directly caused by an injury caused by a covered countermeasure, can file a claim for compensation.[8] The claim generally must be filed within one year of administration or use of the covered countermeasure.[9] A requester must submit a request package with the documentation necessary to determine eligibility, such as medical records and (in a claim for death benefits) the death certificate and documentation that the requester is an eligible survivor.[10] A determination "as to the direct causation of a covered injury" must be "based on compelling, reliable, valid, medical and scientific evidence."[11]

The CICP's regulations govern many aspects of the determination of CICP claims and the process for submission of CICP claims is also outlined on the CICP's website.[12] If a requester has not submitted sufficient documentation to determine whether the requester is eligible for compensation, the program will inform the requester and give the requester an opportunity to submit the necessary documentation.[13] The CICP's medical staff conduct an initial medical review of request packages.[14] The Director of the Division of Injury Compensation Programs

---

[7] See 42 C.F.R. Part 110.
[8] 42 C.F.R. § 110.10(a).
[9] Id. § 110.42(a).
[10] Id. §§ 110.41, 110.50, 110.51, 110.52.
[11] 42 U.S.C. § 247d-6e(b)(4).
[12] see generally 42 C.F.R. Part 110; HRSA, Countermeasures Injury Compensation Program (CICP) Filing Process, https://www.hrsa.gov/cicp/filing-process
[13] 42 C.F.R. § 110.71.
[14] https://www.hrsa.gov/cicp/filing-process.

("DICP") then makes determinations concerning whether a requester is eligible for compensation.[15] If the requester is eligible for compensation, the program will inform the requester what documentation the requester must submit to establish the amount of compensation.[16] The Director then determines the amount of benefits and notifies the requester in a written decision letter.[17] If the Director determines that the requester is not eligible for compensation, the Director will issue a written decision letter to the requester, explaining the basis for the disapproval.[18] Therefore, regardless of how the claim is resolved, the requester will receive a written decision letter setting forth the basis of the Director's determination.

A requester may seek reconsideration, of either a determination that the requester is not eligible for benefits or the amount of such benefits, by submitting a letter seeking reconsideration within 60 days of the decision on the requester's claim.[19] A qualified panel, independent of the CICP, reviews the reconsideration request (including the documentation previously submitted to the CICP) and makes a recommendation as to the merits of the claim.[20] The Associate Administrator of the Health Systems Bureau ("HSB"), a bureau within HRSA, reviews the panel's recommendation and makes a final written determination of eligibility or benefits amount, which is sent to the requester or his or her representative.[21] The Associate

---

[15] See 3d Am. Compl., Ex. 5, ECF No. 49-1 (decision letter signed by Dr. Grimes).
[16] See 42 C.F.R. § 110.60; see also id. §§ 110.80-110.82 (regulations setting forth how benefits are calculated).
[17] See id. § 110.73.
[18] See id. § 110.74; see, e.g., 3d Am. Compl., Ex. 5.
[19] 42 C.F.R. § 110.90(a).
[20] Id. § 110.90(c).
[21] Id. § 110.90(c).

Administrator's determination is not subject to further administrative or judicial review.[22]

## Procedural Background

Plaintiffs filed their original Complaint on October 10, 2023.[23] On October 31, 2023, Plaintiffs filed their First Amended Complaint raising claims under the Fifth Amendment (procedural and substantive due process), Seventh Amendment (right to jury trial), and seeking a declaratory judgment and preliminary and permanent injunctive relief. [24] After the Court identified numerous deficiencies in Plaintiffs' claims during a December 1, 2023, status conference, Plaintiffs withdrew their Motion for Preliminary Injunction, and Defendants consented to Plaintiffs further amending their complaint.[25] Plaintiffs then filed the Second Amended Complaint, wherein they continued to seek permanent injunctive relief enjoining Defendants from enforcing the PREP Act unless the federal government made a series of changes to the CICP.[26]

The operative Third Amended Complaint narrows Plaintiffs' claims, legal theories, and relief sought in several respects — specifically, by removing the Seventh Amendment claim,[27] two of the four liberty or property interests that Plaintiffs claimed were at stake in their procedural due process claim,[28] the theory that the

---

[22] See 42 C.F.R. §§ 110.90(c), 110.92; 42 U.S.C. § 247d-6e(b)(4); 42 U.S.C. § 239a(f)(2).
[23] ECF No. 1.
[24] ECF No. 20; See 1st Am. Compl. ¶¶ 168-208.
[25] see ECF No. 33 (minutes of status conference); ECF No. 34, ¶¶ 1-2.
[26] see 2d Am. Compl., Prayer for Relief, § 2
[27] see 2d Am. Compl. ¶¶ 169-89
[28] see id. ¶¶ 139-40

time limit for filing CICP claims violates substantive due process,[29] and the request for injunctive relief.[30]

As alleged in the Third Amended Complaint, Plaintiffs are five individuals who received a COVID-19 vaccine and have suffered injuries that they contend were caused by the vaccine.

Plaintiff Bourque received COVID-19 vaccine doses on March 17, 2021, and June 17, 2021.[31] She alleges that she suffered injuries immediately after receiving each shot.[32] She filed a CICP claim during March 2022.[33] She was informed by a CICP representative on February 8, 2023, that CICP was lacking her medical records.[34] She does not allege what subsequent steps she took, if any, to ensure that the CICP had the medical records necessary to resolve her claim. Her claim remains pending.[35]

Plaintiff Burkey received a COVID-19 vaccine dose on March 20, 2021.[36] She alleges that she began to suffer serious injuries shortly after receiving the vaccine.[37] She submitted a CICP claim in November 2021.[38] On December 20, 2023, the Director of the DICP issued a decision letter to Burkey's mother (who submitted the claim on Burkey's behalf), which Burkey received on January 5, 2024, determining that Burkey had suffered an injury that was eligible for compensation and requesting

---

[29] see id. ¶¶ 163-65,
[30] see id., Prayer for Relief, § 2
[31] 3d Am. Compl. ¶¶ 26, 28.
[32] Id. ¶¶ 26, 28.
[33] Id. ¶ 34.
[34] Id.
[35] Id. ¶ 36.
[36] Id. ¶ 38.
[37] Id. ¶¶ 39-46.
[38] Id. ¶ 55.

additional documentation to determine the amount of benefits.[39]

Plaintiff Flint received a COVID-19 vaccine dose on February 1, 2021.[40] He alleges that he suffered injuries shortly after receiving the vaccine.[41] He filed a CICP claim on April 25, 2021.[42] His claim was denied on May 25, 2022, in a letter signed by the Director of the DICP.[43] The letter concluded that "[t]he compelling, reliable and valid medical and scientific evidence does not support a causal association between the Pfizer COVID-19 vaccine" and Flint's injuries.[44] On June 15, 2022, Flint requested reconsideration.[45] His request for reconsideration was denied in a signed letter dated January 18, 2023.[46]

Plaintiff Zimmerman received a COVID-19 vaccine dose on March 14, 2021.[47] She alleges that she immediately began suffering serious injuries.[48] She filed a CICP claim on October 1, 2021.[49] Her claim remains pending.[50]

Plaintiff Krogmeier received a COVID-19 vaccine dose on September 3, 2021.[51] She alleges that she began suffering injuries immediately after receiving the vaccine.[52] Krogmeier submitted a CICP claim in September 2021.[53] Although she

---

[39] Id. ¶ 56.4
[40] Id. ¶ 58.
[41] Id. ¶¶ 58-60.
[42] Id. ¶ 63.
[43] Id.; see also id. Ex. 5.
[44] Id. Ex. 5.
[45] Id. ¶ 65.
[46] Id.
[47] Id. ¶ 69.
[48] Id.
[49] Id. ¶ 76.
[50] Id. ¶ 81.
[51] Id. ¶ 84.
[52] Id. ¶ 86.
[53] Id. ¶ 93

alleges that her physicians submitted medical records, she was informed by a CICP representative on February 9, 2023, that the CICP was lacking her medical records, and that the CICP could not progress with processing her claim without the medical records.[54] She does not allege what steps she subsequently took, if any, to ensure that the CICP had her medical records.

To summarize, one Plaintiff (Burkey) received a decision letter indicating that her claim was compensable approximately two years after submitting her claim. One Plaintiff (Flint) had a claim denied 13 months after submission and a reconsideration request denied seven months after submission. Two Plaintiffs (Bourque and Krogmeier) were informed by CICP representatives that the CICP did not have medical records needed to process their claims but do not allege what subsequent steps, if any, they took to ensure that CICP had or received those records. And the remaining Plaintiff (Zimmerman) had a claim pending for approximately two years when Plaintiffs initiated this case.

The Third Amended Complaint names HHS and HRSA as Defendants.[55] Plaintiffs no longer seek injunctive relief, but they seek a declaratory judgment that the PREP Act in its entirety, including its "liability protection and . . . compensation process for COVID-19 vaccines," is unconstitutional in violation of the Fifth Amendment.[56] Plaintiffs allege that they "desire to bring common law and state law claims for, inter alia, negligence, intentional infliction of emotional distress ('IIED'),

---

[54] Id. ¶ 94.
[55] See id. ¶¶ 22-23.6
[56] Id., Prayer for Relief, § 1.7

8

and products liability against the manufacturers and administrators of the products that injured them," but they neither identify the manufacturers and administrators that they would like to sue nor name them as defendants to this lawsuit.[57]

## **LEGAL STANDARD**

"Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move for the dismissal of a plaintiff's claims for lack of subject matter jurisdiction."[58] "The plaintiff bears the burden of establishing subject matter jurisdiction."[59] When a defendant raises a "facial attack" on the court's subject matter jurisdiction based on the pleadings, a court "look[s] to the sufficiency of the allegations in the complaint" to "determine whether [the] complaint sufficiently alleges the necessary jurisdictional facts."[60]

"In order to survive a motion to dismiss brought under Rule 12(b)(6), a plaintiff must 'state a claim to relief that is plausible on its face.'"[61] Although "[t]he Court must accept as true all of the factual allegations in the complaint," it "is 'not bound to accept as true a legal conclusion couched as a factual allegation.'"[62] "A court may dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory."[63] In resolving a Rule 12(b)(6) motion to dismiss, a court "may consider the complaint, its proper attachments, documents incorporated into the complaint by

---

[57] id. ¶ 2.

[58] Strange v. Wal-Mart Inc., No. CV 18-0325, 2018 WL 2269919, at *1 (W.D. La. May 16, 2018).

[59] Id.

[60] Id. at *2 (quoting Paterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. 1981)).

[61] Joyner v. Kansas City S. R.R. Co., No. CV 22-180, 2022 WL 1548097, at *1 (W.D. La. May 16, 2022) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

[62] Id. (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

[63] Id.

reference, and matters of which a court may take judicial notice."[64]

## ANALYSIS

### I.   Plaintiffs Fail to Plead a Basis for Standing

Plaintiffs ask the Court to declare the PREP Act unconstitutional — both the provisions providing immunity from liability and those creating the compensation fund that the CICP administers.[65] Defendants claim that Plaintiffs lack standing because they fail to show that this relief would redress their injuries.[66] Having reviewed the applicable law, the Court agrees with Defendants that Plaintiffs' injury is unlikely to be redressed by the judicial relief requested.

Article III limits the power of federal courts to "Cases" and "Controversies."[67] "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy."[68] "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."[69] "The plaintiff must clearly allege facts at the pleading stage establishing all three criteria."[70]

The injury-in-fact and causation requirements are not disputed here.

---

[64] Doe v. United States, 853 F.3d 792, 800 (5th Cir. 2017) (citations and quotations omitted).
[65] R. Doc. 49 ¶ 135 (seeking declaration that "the provisions of the PREP Act which create the scheme providing liability protection and a compensation process for COVID-19 vaccines, including but not limited to 42 U.S.C. §§ 247d-6d and 247d-6e, are unconstitutional"); R. Doc. 58 at 10.
[66] R. Doc. 53-1 at 18.
[67] See Spokeo, Inc. v. Robins, 578 U.S. 330, 337, 136 S. Ct. 1540, 1547, 194 L.Ed.2d 635 (2016) (citing U.S. Const. art. III, § 2).
[68] Id. at 338.
[69] TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021).
[70] Satanic Temple Inc. v. Young, No. 4:21-CV-00387, 2023 WL 4317185, at *2 (S.D. Tex. July 3, 2023).

Defendants aver that the requested relief will not redress Plaintiffs' claimed injuries.[71] Defendants contend that non-parties to this lawsuit—i.e. the intended defendants of Plaintiffs' tort claims, vaccine manufacturers and administrators— would not be bound by declaratory judgment against Defendants in this lawsuit and thus would not be precluded from asserting PREP Act immunity as a defense in future litigation.[72] Defendants also allege that the relief sought could have the adverse effect of preventing Plaintiffs from pursuing their CICP claims.[73] Finally, Defendants assert that Plaintiffs have failed to allege that they have viable tort claims (specifically suggesting that their state claims are now untimely) even if PREP Act immunity were declared unconstitutional, thus making the relief requested unlikely to redress their claimed injuries.[74]

While Plaintiffs acknowledge the general rule precluding the enforcement of declaratory judgments against non-litigants, they submit that this case falls within an exception to the rule whereby statutory schemes that are not consistent with due process do not bind successive litigation.[75] Plaintiffs maintain that,

> A declaration by this Court that the PREP Act is unconstitutional as applied to Plaintiffs establishes redressability of Plaintiffs' injuries. Such a declaration would provide Plaintiffs an avenue for relief in subsequent state or federal court litigation by helping remove an unconstitutional roadblock that currently precludes actions against manufacturers of COVID-19 vaccines.[76]

---

[71] R. Doc. 53-1 at 9; See R. Doc. 49, ¶ 2 (Plaintiffs asserting that they "desire to bring common law and state law claims . . . against the manufacturers and administrators of" COVID-19 vaccines, who benefit from PREP Act immunity).

[72] R. Doc. 53-1 at 9, 19.

[73] R. Doc. 53-1 at 9-10.

[74] R. Doc. 53-1 at 9-10, 20.

[75] R. Doc. 58 at 12-13.

[76] R. Doc. 58 at 11-12.

Plaintiffs claim that the requested relief would "[i]mplicit[ly] . . . strik[e] down . . . the immunity provisions," meaning that the PREP Act would "be considered unconstitutional when applied to everyone."[77]

Declaratory judgment is unlikely to redress Plaintiffs' injuries because "[t]his form of relief conclusively resolves the legal rights of *the parties*."[78] Importantly, "a declaratory judgment binds the parties, but only the parties."[79] The purpose of a declaratory judgment "is to establish a binding adjudication that enables the parties to enjoy the benefits of reliance and repose secured by res judicata."[80] "Without preclusive effect, a declaratory judgment is little more than an advisory opinion."[81] The narrow exception to this rule invoked by Plaintiffs, applies only when a "special statutory scheme" such as "bankruptcy" or "probate" authorizes a court to foreclose later litigation by nonparties.[82] Here, the constitutionality issues would not be settled between Plaintiffs and the vaccine manufacturers and/or administrators, which would leave the declaratory judgment powerless to remedy the alleged harm.[83] The

---

[77] R. Doc. 58 at 11-13.

[78] Haaland v. Brackeen, 599 U.S. 255, 293, 143 S.Ct. 1609, 1639, 216 L.Ed.2d 254 (2023) (emphasis added) (internal quotations omitted) (citing Medtronic, Inc. v. Mirowski Family Ventures, LLC, 571 U.S. 191, 200, 134 S.Ct. 843, 187 L.Ed.2d 703 (2014)); see 28 U.S.C. § 2201 (emphasis added) (the Declaratory Judgment Act empowers courts "to declare the rights and other legal relations of any interested *party* seeking such declaration[.]")

[79] Skyworks, Ltd. v. Centers for Disease Control & Prevention, 542 F. Supp. 3d 719, 728 (N.D. Ohio 2021); see also Lujan v. Defs. of Wildlife, 504 U.S. 555, 569 (1992) (nonparties are not "obliged to honor an incidental legal determination the suit produced"); Bituminous Cas. Corp. v. J & L Lumber Co., 373 F.3d 807, 814 (6th Cir. 2004) (a declaratory judgment "would not be binding as to" someone who "was not made a party to the declaratory judgment action" and "could not be res judicata" against that party in a separate tort action).

[80] Haaland v. Brackeen, 599 U.S. at 293, 143 S.Ct. 1609, 216 L.Ed.2d 254 (quoting 18A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4446 (3d ed. Supp. 2022).

[81] Haaland v. Brackeen, 599 U.S. at 293, 143 S.Ct. 1609, 216 L.Ed.2d 254 (citations omitted).

[82] See Taylor v. Sturgell, 553 U.S. 880, 895, 128 S.Ct. 2161, 2173, 171 L.Ed.2d 155 (2008).

[83] Brackeen v. Haaland, 994 F.3d 249, 448 (5th Cir. 2021) (Costa, J., concurring in part and dissenting in part) ("What saves proper declaratory judgments from a redressability problem—but is lacking here—is that they have preclusive effect on a traditional lawsuit that is imminent"), aff'd in part,

12

Court finds that the relief sought is not likely to redress Plaintiffs' alleged constitutional injuries because the intended defendants of Plaintiffs' tort claims are nonparties who would not be bound by this Court's judgment.[84]

Plaintiffs insist that they "need only show that a favorable ruling could potentially lessen its injury; it need not definitively demonstrate that a victory would completely remedy the harm"[85] and aver that redressability is established because a favorable declaration by this Court could be cited as persuasive authority in future cases.[86] But "[r]edressability requires that the court be able to afford relief through the exercise of its power, not through the persuasive or even awe-inspiring effect of the opinion explaining the exercise of its power."[87] Otherwise, redressability would be satisfied every time a decision might persuade parties who are not before the court—contrary to Article III's strict prohibition on "issuing advisory opinions."[88] "It is a federal court's judgment, not its opinion, that remedies an injury; thus it is the judgment, not the opinion, that demonstrates redressability." Here, Plaintiffs can hope for nothing more than an opinion that provisions of the PREP Act are unconstitutional and thus cannot satisfy Article III.

Plaintiffs fail to show that a declaratory judgment about the rights and

---

vacated in part, rev'd in part, 599 U.S. 255 (2023).

[84] See Taylor, 553 U.S. at 892-93 (recognizing the general rule that nonparties to litigation are not bound by judgments).

[85] Sanchez v. R.G.L., 761 F.3d 495, 506 (5th Cir. 2014) (citation and quotation marks omitted)).

[86] R. Doc. 58 at 12.

[87] Haaland v. Brackeen, 599 U.S. at  294, 143 S.Ct. 1609, 216 L.Ed.2d 254 (quoting Franklin v. Massachusetts, 505 U.S. 788, 825, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992) (Scalia, J., concurring in part and concurring in judgment) (emphasis in original); see also United States v. Juvenile Male, 564 U.S. 932, 937, 131 S.Ct. 2860, 180 L.Ed.2d 811 (2011) (per curiam) (a judgment's "possible, indirect benefit in a future lawsuit" does not preserve standing)).

[88] Carney v. Adams, 592 U. S. 53, 58, 141 S.Ct. 493, 498, 208 L.Ed.2d 305 (2020).

obligations of the parties in this case would remedy their injury, given that vaccine manufacturers would remain free to assert immunity in future cases against them. Plaintiffs therefore lack standing.

## **CONCLUSION**

For the reasons stated above, Defendants' Motion to Dismiss (R. Doc. 53) is hereby **GRANTED**.

**IT IS ORDERED** that Plaintiffs' Third Amended Complaint is hereby **DISMISSED WITH PREJUDICE**.

**THUS DONE AND SIGNED** this 30th day of September 2025.


_____
**JERRY EDWARDS, JR.**
**UNITED STATES DISTRICT JUDGE**

14